UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JUANITA RAYBURN

CIVIL ACTION

VERSUS

NO. 22-484-JWD-RLB

REGIONS FINANCIAL CORP D/B/A
REGIONS BANK

## RULING AND ORDER

This matter comes before the Court on the *Motion for Summary Judgment* (Doc. 32) filed by Defendant Regions Financial Corp., d/b/a Regions Bank ("Defendant" or "Regions Bank"). Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, arguing that Plaintiff Juanita Rayburn ("Plaintiff") has failed to show a genuine issue of material fact as to each element of her claim. (Doc. 32 at 1.) Plaintiff has filed *Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment* (Doc. 35) ("*Opposition*"). Defendant then filed a *Reply Memorandum in Support of Motion for Summary Judgment* (Doc. 37) ("*Reply*"). For the reasons stated below, the Court denies Defendant's *Motion for Summary Judgment*.

I.    BACKGROUND

A.    **Factual Background**

The parties agree that on July 30, 2021, Plaintiff fell on a mat at the Regions Bank branch located at 5950 Plank Road in Baton Rouge, Louisiana, after turning away from the teller's window to exit the bank door. (Doc. 1-2 at ¶ 3; Doc. 32-1 at ¶¶ 1–5.) Plaintiff claims that when turning to leave upon completing her banking transaction, she turned to leave and tripped over a "wrinkled carpet runner, fell, and suffered severe and disabling injuries." (Doc. 1-2 at ¶ 3.) She states that after she fell, Defendant's employee Nikita Jackson ("Jackson"), a bank service

1

representative, came to help her. (Doc. 35 at 1.) Plaintiff claims that when Jackson came to her aid, Jackson "told [her] don't get up right then because they still had buckles in the rug." (*Id.* at 7.) Plaintiff argues that Jackson's statements show that the mat had "an existing wrinkle" prior to Plaintiff's fall. (*Id.*) Defendant claims "[t]here were no defects in the mat when Plaintiff crossed over the mat entering the bank" and that "there is no evidence that any defect existed in the mat prior to Plaintiff's fall, as opposed to whether Plaintiff's fall caused a wrinkle or buckle in the mat." (Doc. 32-1 at ¶¶ 3, 7.)

Plaintiff claims that the mat was inherently hazardous due to "wrinkles in the mat" that "were created when it was walked upon." (Doc. 35 at 2.) Plaintiff argues that "[t]he sliding mat by itself created a hazard and the wrinkles caused by the sliding of said mat created a hazard." (*Id.*) According to Plaintiff, "[t]he mat has a long, long history of buckling up/wrinkling and having customers and employees alike stumble over it." (*Id.*) Defendant argues that there is no evidence of "any defect in the mat prior to [Plaintiff's] fall" and that Plaintiff therefore "cannot establish that Regions created any such defect, or knew or should have known of any defective condition that caused her fall." (Doc. 32-2 at 5.)

## B.    Procedural Background

In addition to the pending *Motion for Summary Judgment*, Defendant filed a *Motion to Strike* (Doc. 36), asking the Court to exclude from evidence the affidavits Plaintiff attached to her *Opposition* from its deliberations at the summary judgment stage, any hearings, or a trial. (Doc. 36 at 1.) Plaintiff filed *Plaintiff's Objection to Defendant's Motion to Strike* (Doc. 39). Plaintiff and Defendant then each filed *Motions in Limine*, (Docs. 44, 46, 47), and replies in opposition to the respective *Motions in Limine*, (Docs. 51, 52, 53). The Court held a Pretrial Conference on November 12, 2024, at which it considered Defendant's *Motion to Strike* and the *Motions in*

*Limine.* (Doc. 54.) The Court denied Plaintiff's two *Motions in Limine*; it granted in part and denied in part Defendant's *Motion in Limine*; and it denied Defendant's *Motion to Strike*. (Doc. 54 at 2.) As a result, the Court will consider in this *Motion for Summary Judgment* the affidavits Plaintiff attached to her *Opposition*.

## II.    PARTIES' ARGUMENTS

In its *Motion for Summary Judgment*, Defendant argues that "Plaintiff cannot meet her burden of proof on two elements of her claim." (Doc. 32 at 1.) It asserts that she "cannot show that the alleged defect in the mat, *i.e.*, the wrinkle, existed prior to her fall[,]" and that she "cannot show that Defendant had actual or constructive knowledge of the alleged defect in the mat prior to Plaintiff's fall[.]" (*Id.*) Specifically, Defendant argues that "Plaintiff cannot present evidence to establish a genuine issue of material fact that (1) Plaintiff tripped over a condition that presented an unreasonable risk of harm, and (2) that Defendant either created the hazard or had actual or constructive knowledge of the hazard." (Doc. 32-2 at 8.)

With respect to the first of these, Defendant argues that Plaintiff offers no facts or testimony to show that the mat was defective or created an unreasonable risk of harm. (*Id.* at 8–9.) It asserts that she "simply has no evidence to establish that there was any defect in the mat[]" and indeed, that "she does not know if she tripped over a buckle in the mat, as opposed to the mat itself." (*Id.* at 9.)

With respect to its second argument, Defendant says that "Plaintiff also cannot show that Defendant knew or should have known of the defect." (*Id.* at 10.) It claims that if Plaintiff makes an argument of constructive knowledge, she must show that "the conditions that caused the injury existed for 'such a period of time' that those responsible, by the exercise of ordinary care and diligence, must have known of the existence in general and could have guarded the public from

injury." (*Id.* (quoting *Boutin v. Roman Catholic Church of the Diocese of Baton Rouge*, 14-313 (La. App. 5 Cir. 10/29/14), 164 So. 3d 243, 247).) It argues that Plaintiff has not shown any actual knowledge, nor any evidence that "any wrinkle or buckle in the mat existed for <u>any</u> time period prior to her fall." (*Id.*) As a result, it argues, summary judgment is appropriate here.

Defendant then argues that even if there were a defect in the mat, "Plaintiff cannot prove that the mat constituted an unreasonable risk" because the condition was open and obvious. (*Id.* at 11.) Defendant asserts that where a defect is open and obvious to all, a defendant does not generally have any duty to protect against it. (*Id.*) Defendant argues that floor mats and wrinkles are open and obvious defects regardless of whether the particular plaintiff in question noticed the defect. (*Id.* at 12 (citing *Smith v. Circle K Stores, Inc.*, 2021 U.S. Dist. LEXIS 200539, at *14–15, 2021 WL 4853846, at *6 (W.D. La. Oct. 18, 2021)).)

In her *Opposition*, Plaintiff argues that the Merchant Liability Statute ("MLS") should govern her claim. (Doc. 35 at 4.) She asserts that she has presented genuine issues of material fact, specifically with respect to the "unreasonably dangerous condition" that she alleges the mat created. (*Id.* at 5.) She alleges that this mat had a history of wrinkling up and causing people to stumble. (*Id.* at 5–6.) Plaintiff further argues that bank employees and security guards contracted to work at the bank were aware of the mat's tendency to wrinkle for years. (*Id.* at 7.) She argues that Defendant therefore knew or should have known about the defect. (*Id.*)

Plaintiff argues that despite this years-long knowledge of the mat's tendency to wrinkle by people present in the bank, the alleged defect was not open and obvious. (*Id.*) She asserts that "[i]n order for an alleged hazard to be considered obvious and apparent, the hazard should be one that is open and obvious to everyone who may potentially encounter it." (*Id.* (citing *Broussard v. State ex rel. Office of State Bldgs.*, 2012-1238 (La. 04/05/13), 113 So. 3d 175, 184)).) She argues that

she did not have time to look down at the mat, that the sun would have obscured her view had she done so, and that the "small wrinkles would be difficult to see" regardless due to the black pile of the mat. (*Id.* at 8.) Consequently, she claims, the alleged hazard was not open and obvious to her. She argues that the mat's tendency to slide when stepped upon was also not open or obvious. (*Id.*)

Finally, Plaintiff argues that *res ipsa loquitur* should apply, claiming that "her fall would not have occurred had it not been for the negligence of Regions." (*Id.* at 9.) She asserts that she had no history of falls and that Defendant "did not show that she stumbled over her own feet[,]" that she was not pushed or distracted, and that the mat had previously caused others to stumble. (*Id.*)

In its *Reply*, Defendant argues that any claims Plaintiff asserts for the first time in her *Opposition* should be dismissed. (Doc. 37 at 1.) Specifically, Defendant points to Plaintiff's allegation that the mat "was defective in design[,]" which it claims "sounds under the Louisiana Product's Liability Act[]" ("LPLA"). (*Id.*) Defendant argues that Plaintiff cannot assert that "the mere presence of the mat was an unreasonably dangerous condition" due to the alleged "defect[] in design because whenever it was walked upon, it wrinkled and buckled." (*Id.* at 3.) Defendant argues that "[t]o the extent that Plaintiff argues that the mat was unreasonably dangerous pursuant to the LPLA, this claim must fail, first, because Plaintiff has failed to assert and plead such a claim." (*Id.*) It argues that Plaintiff has not provided evidence that the mat is defective in design, and that even if it had, Defendant is not the manufacturer of the mat. (*Id.*)

Additionally, Defendant argues that as a bank, it does not fall within the definition of a merchant under the MLS. (*Id.* at 2.) It argues that Plaintiff's claims under the LPLA and MLS should therefore be dismissed. (*Id.* at 1–2.)

Defendant further argues that Plaintiff cannot establish that the mat constituted an unreasonably dangerous condition, nor that Defendant either created or had actual or constructive knowledge of the condition. (*Id.* at 2.) Defendant asserts that even with the inclusion of the affidavits, Plaintiff has not shown that the mat was unreasonably dangerous or that Defendant knew or should have known about the alleged danger. (*Id.*) Defendant argues that Plaintiff has stated that "she did not know what caused her fall" and cannot present evidence that a wrinkle or buckle in the mat caused her fall, or that the mat slid and caused her fall. (*Id.* at 4.) Defendant claims that none of the affidavits provided by Plaintiff support her assertion that she tripped on wrinkles or buckles in the mat. (*Id.* at 4–7.) It further argues that these affidavits do not support the assertion that Defendant knew or should have known about the alleged defect in the mat because they fail to state when any alleged prior wrinkles or stumbles over the mat occurred. (*Id.* at 7–8.) Likewise, Defendant argues that these affidavits fail to allege whether the mats in the affidavit were the same used at the time of Plaintiff's fall. (*Id.* at 8.) Finally, Defendant argues that the affidavits fail to state that the alleged prior stumbles were ever reported to Defendant. (*Id.*) As a result, it asserts, Plaintiff has not provided evidence of Defendant's actual or constructive knowledge of the allegedly harmful condition. (*Id.* at 8–9.)

Defendant argues again that the condition of the mat was open and obvious, noting that Plaintiff had been to the bank many times previously, she had walked over the mat without incident earlier that day, no other customers had fallen that day, and her view was not obstructed. (*Id.* at 9.) Defendant argues that while Plaintiff alleges that there may have been a glare inside of the 5950 Plank Road branch at times, she does not present any facts as to the actual presence of a glare when she fell. (*Id.*)

6

Defendant next addresses Plaintiff's argument that the doctrine of *res ipsa loquitor* should apply. (*Id.*) Defendant counters that "falls are ordinary accidents that occur in the absence negligence[,]" while "[r]es ipsa loquitur is a rule of circumstantial evidence that applies when the facts suggest that the negligence of the defendant is the most plausible explanation of the injury." (*Id.*) Defendant argues that Plaintiff cannot show the three elements required to establish that *res ipsa loquitur* should apply. (*Id.*) It asserts that she cannot show circumstances so unusual to infer negligence by Defendant, "cannot eliminate her own negligence as a probable cause of the injury[,]" and therefore cannot show that the only reasonable conclusion is that the accident was caused by Defendant's breach. (*Id.* at 9–10.) Accordingly, Defendant asks the Court to reject Plaintiff's *res ipsa loquitur* argument.

## III.  LEGAL STANDARDS

### A.  Summary Judgment

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure, which states that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The movant bears the initial burden and must identify 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Pioneer Expl., L.L.C. v.*

*Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted)).

However, "the movant 'need not negate the elements of the nonmovant's case.'" *Id.* (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc))). That is, "[a] movant for summary judgment need not set forth evidence when the nonmovant bears the burden of persuasion at trial." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019) (citing *Celotex Corp.*, 477 U.S. at 323 ("[W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim.") (emphasis in original)). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Id.* (citing *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002)).

If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . The nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (cleaned up). The non-mover's "burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (cleaned up).

Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (cleaned up).

### B.    Louisiana Civil Code Article 2317.1

Article 2317.1 of the Louisiana Civil Code provides that:

The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

La. Civ. Code Ann. art. 2317.1.

In order for a plaintiff "to recover for damages caused by a defective thing, a plaintiff must

prove:

'(1) that the thing which caused the damage was in the defendant's custody or control, (2) that it had a vice or defect that presented an unreasonable risk of harm, (3) that the defendant knew or should have known of the vice or defect, (4) that the damage could have been prevented by the exercise of reasonable care, and (5) that the defendant failed to exercise such reasonable care. If the plaintiff fails to provide proof any one of these elements, his/her claim fails.'"

*Arceneaux v. Am. Trucking & Transp. Ins. Co. Risk Retention Grp.*, No. 21-30196, 2022

U.S. App. LEXIS 4368, at *6, 2022 WL 488052, at *3 (5th Cir. Feb. 17, 2022) (quoting *Riggs v.*

*Opelousas Gen. Hosp. Tr. Auth.*, 08-591 (La. App. 3 Cir 11/05/08), 997 So. 2d 814, 817).

### C.    Merchant Liability Statute

The Merchant Liability Statute ("MLS") provides that:

A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.

La. Rev. Stat. Ann. § 9:2800.6(A).

In a negligence claim under the MLS, the plaintiff has the burden of proving:

(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
(3) The merchant failed to exercise reasonable care.

*Id.* at § 9:2800.6(B).

A key element in proving constructive notice under the MLS is "the temporal element," which requires that "the plaintiff must show 'that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.'" *Miller v. Michaels Stores, Inc.*, 98 F.4th 211, 216 (5th Cir. 2024) (quoting *Fountain v. Wal-Mart Stores, Inc.*, 19-669 (La. App. 3 Cir 03/18/20), 297 So. 3d 100, 106); La. Rev. Stat. § 9:2800.6(B)(2)). The temporal element requires that "a plaintiff 'must make a positive showing of the existence of the condition prior to the fall' as well as the 'additional showing that the condition existed *for some time* before the fall.'" *Id.* (quoting *White v. Wal-Mart Stores, Inc.*, 97-0393 (La. 09/09/97), 699 So. 2d 1081, 1084). As such, "to survive summary judgment, a plaintiff must satisfy the 'prerequisite' of putting forth 'some positive evidence . . . of how long the condition existed prior to the fall.'" *Id.* (quoting *Bagley v. Albertsons, Inc.*, 491 F.3d 328, 331 (5th Cir. 2007)). "[E]vidence clearly indicating that a hazardous condition existed for some time satisfies the temporal element." *Miller*, 98 F.4th at 217.

**D.    *Res Ipsa Loquitur***

"The Louisiana Supreme Court explains the principle of res ipsa loquitur as 'a rule of circumstantial evidence that infers negligence on the part of defendants because the facts of the case indicate that the negligence of the defendants is the probable cause of the accident, in the

absence of other equally probable explanations offered by credible witnesses.'" *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 312 (5th Cir. 2017) (quoting *Montgomery v. Opelousas Gen. Hosp.*, 540 So. 2d 312 (La. 1989)). This doctrine "is reserved for those circumstances that 'are of such an unusual character as to justify, in the absence of other evidence bearing on the subject, the inference that the accident was due to the negligence of the one having control of the thing which caused the injury.'" *Id.* (quoting *Lawson v. Mitsubishi Motor Sales of Am., Inc.*, 938 So. 2d 35, 49 (La. 09/06/06) (internal quotations omitted)). "Three criteria must be satisfied to invoke the doctrine: '(1) the injury is of the kind which does not ordinarily occur in the absence of negligence on someone's part; (2) the evidence sufficiently eliminates other more probable causes of the injury, such as the conduct of the plaintiff or of a third person; and (3) the alleged negligence of the defendant must be within the scope of the defendant's duty to the plaintiff.'" *Dawson v. Rocktenn Servs.*, 674 F. App'x 335, 343 (5th Cir. 2016) (quoting *Linnear v. CenterPoint Energy Entex/Reliant Energy*, 966 So. 2d 36, 44 (La. 09/05/07); *see also* Restatement (Second) of Torts § 328D (Am. Law Inst. 1965) (recognizing the same three criteria)).

## IV.  ANALYSIS

### A.  Governing Law

First, Defendant asks the Court to reject any claims Plaintiff raises under the Louisiana Products Liability Act ("LPLA"). The LPLA provides for liability against "manufacturers for damage caused by their products." La. R.S. § 9:2800.52. A manufacturer under the LPLA "means a person or entity who is in the business of manufacturing a product for placement into trade or commerce." La. R.S. § 9:2800.53(1). It may also, in some circumstances, refer to sellers of products. *Id.* Defendant is a bank. (Doc. 32-1 at ¶¶ 1–2; Doc. 1-2 at ¶¶ 1–2.) Plaintiff at no point alleges that Defendant is the manufacturer of the mat in question, nor that Defendant sells mats.

(*See* Doc. 1-2 at ¶ 4; Doc. 35 at 1–2.) Plaintiff never specifically invokes the LPLA, but to the extent she states claims that would arise under the LPLA, the Court rejects these claims.

Plaintiff argues that the MLS governs this action, adding "the additional burden… of proving an extra element: that '[t]he merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.'" *Miller*, 98 F.4th at 216 (citing La. Rev. Stat. Ann. § 9:2800.6(B)(2); *Duncan v. Wal-Mart La., L.L.C.*, 863 F.3d 406, 409 (5th Cir. 2017)). Once again, Defendant is a bank. (Doc. 32-1 at ¶¶ 1–2; Doc. 1-2 at ¶¶ 1–2.) Louisiana courts have found that "a bank does not fall within the definition of a merchant as espoused in" the MLS. *Alexander v. Hancock Bank*, 2016-0662 (La. App. 4 Cir 02/08/17), 212 So. 3d 713, 716; *see Lachico v. First Nat. Bank Shares, Inc.*, 95-2124 (La. App. 1 Cir 04/30/96), 673 So. 2d 305, 307. The Court agrees. The MLS defines a merchant as "one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business." La. Rev. Stat. Ann. § 9:2800.6(C)(2). "Although a bank is a 'fixed place of business,' a bank does not sell goods, foods, wares, or merchandise[.]" *Alexander*, 212 So. 3d at 716. Therefore, a bank is not a merchant under the MLS, and the MLS does not apply here.

Instead, the governing law is Louisiana Civil Code Article 2317.1, which imposes a negligence standard. *See Renwick v. P N K Lake Charles, L.L.C.*, 901 F.3d 605, 616 (5th Cir. 2018) ("Under Louisiana law, liability for damages caused by defective things in one's custody or *garde* is governed by articles 2317 and 2317.1 of the Louisiana Civil Code.") (citing *Bufkin v. Felipe's La., LLC*, 2014-0288 (La. 10/15/14), 171 So. 3d 851, 855). Article 2317.1 provides that

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

La. Civ. Code Art. 2317.1.

In order to recover under Article 2317.1, Plaintiff must show: "'[1] that the thing was in the defendant's custody, [2] that the thing contained a defect which presented an unreasonable risk of harm to others, [3] that this defective condition caused damage and [4] that the defendant knew or should have known of the defect.'" *Renwick*, 901 F.3d at 616 (quoting *Luquette v. Great Lakes Reinsurance (UK) PLC*, 16-422 (La. App. 5 Cir 12/21/16), 209 So. 3d 342, 348, *writ denied*, 2017-0136 (La. 03/13/17), 216 So. 3d 806).

### B.    Plaintiff Establishes Genuine Questions of Material Fact Under Article 2317.1

#### 1.    *Plaintiff Establishes That the Mat Was in Defendant's Custody*

With respect to the first element, both parties concede that Plaintiff fell on a mat located in the 5950 Plank Road branch of Regions Bank, which was owned by Defendant and under Defendant's control. (Doc. 32-1 at ¶ 1; Doc. 35 at 1; Doc. 1 at ¶¶ 2–4.) Defendant argues that despite this, "Plaintiff does not know if she tripped over her own feet, the floor, the mat itself, or a wrinkle or buckle in the mat." (Doc. 32-1 at ¶ 7.) Plaintiff, however, testified in her deposition that she "tripped over the rug, and [she] fell." (Doc. 35-6 at 4:2.) In addition, Plaintiff presents the affidavit of Nikita Jackson, then a bank teller at Defendant Regions Bank, who stated that Plaintiff "fell on the mat in front of the door." (Doc. 35-3 at ¶ 4.) At minimum, Defendant does not dispute that the mat was in its custody. At the very least, Plaintiff has established genuine questions of material fact as to the first element of her claim.

#### 2.    *Plaintiff Establishes Questions as to Whether There Was an Unreasonable Risk of Harm*

As to the second element, Defendant argues that "[e]ven if a defect did exist in the mat, which is disputed, Plaintiff cannot prove that the mat constituted an unreasonable risk, as the

condition of the mat, whether flat or not, was open and obvious to all." (Doc. 32-2 at 11.) Plaintiff counters that the mat had a vice or defect that presented an unreasonable risk of harm: the mat's tendency to slide and its "long, long history of buckling up/wrinkling." (Doc. 35 at 2.) She presents, again, the affidavit of Jackson, who states that during her fifteen years of working at this branch of Regions Bank, she and her co-workers all "had occasion to see or know someone that had stumbled over the mat as it would bunch up, wrinkle or fold from being walked upon." (Doc. 35-3 at ¶ 6.)

In addition, Plaintiff presents the affidavit of another former employee, Quinten Trim ("Trim"), who worked at Regions Bank from 2010 through 2017. (Doc. 35-5 at ¶ 1.) Trim testifies that when he worked there, there was a mat inside the front door and he "observed on many occasions that the mat/carpet was wrinkled, from being walked upon." (*Id.* at ¶ 3, 5.) He also states that he "observed and heard of numerous customers that stumbled or tripped over the mat/carpet[,]" and that it was "well known by us, the bank employees, that occasionally customers stumbled/tripped over the carpets." (*Id.* at ¶¶ 7–8.)

Plaintiff also presents the affidavits of two former security guards, Louis Parker ("Parker") and Michael Seymore ("Seymore"). (Doc. 35-2; Doc. 35-4.) Parker was employed by a private company and stationed at the 5950 Plank Road branch for at least six months, with the end date unclear. (Doc. 35-2 at ¶ 2.) He testifies that the mat by the door when he worked there "was thin and would often bunch up or wrinkle from being walked upon." (*Id.* at ¶ 5.) He states that during his time there, he "observed numerous customers as well as a few employees trip over the mat/carpet." (*Id.* at ¶ 9.) Likewise, Seymore is a former security officer for a private company who was stationed at the bank for approximately five years, ending in 2019. (Doc. 35-4 at ¶ 1.) Seymore testifies that the mat by the door when he worked there "would bunch up or wrinkle from being

walked upon[,]" "from people traversing it in a wheelchair," or from people "walking over it with a walker or cane." (*Id.* at ¶ 8.) He states he "witnessed customers stumble over the mat/carpet and even some employees." (*Id.* at ¶ 10.)

Defendant argues that showing an unreasonable risk requires showing some defect or vice in the mat. (Doc. 32-2 at 8–9; Doc. 37 at 3–4.) It argues that Plaintiff has failed to show that, even if there was a history of wrinkling, any wrinkles actually existed in the mat on the day she fell prior to her fall. (Doc. 37 at 3–4.)

"Louisiana courts employ a risk-utility balancing analysis to determine whether a defect presents an unreasonable risk of harm." *Renwick*, 901 F.3d at 617 (citing *Reed v. Wal-Mart Stores*, 97-1174 (La. 03/04/98), 708 So. 2d 362, 365). The Louisiana Supreme Court "has synthesized the risk-utility balancing test to a consideration of four pertinent factors: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature." *Bufkin*, 171 So. 3d at 856 (collecting cases). The Louisiana Supreme Court has "described the question of whether a defect presents an unreasonable risk of harm as 'a disputed issue of mixed fact and law or policy that is peculiarly a question for the jury or trier of the facts.'" *Broussard*, 113 So. 3d at 183 (quoting *Reed*, 708 So. 2d at 364). "[T]he analytic framework for evaluating an unreasonable risk of harm is properly classified as a determination of whether a defendant breached a duty owed, rather than a determination of whether a duty is owed ab initio. It is axiomatic that the issue of whether a duty is owed is a question of law, and the issue of whether a defendant has breached a duty owed is a question of fact." *Id.* at 185 (citing *Brewer v. J.B. Hunt Transp., Inc.*, 09-1408, p. 14 (La. 03/16/10), 35 So. 3d 230, 240 (citing *Mundy v. Dep't of Health and Human*

*Res.*, 620 So. 2d 811, 813 (La. 1993))). "The judge decides the former, and the fact-finder—judge or jury—decides the latter." *Id.*

"However, a defendant 'generally does not have a duty to protect against an open and obvious hazard,' and a dangerous condition that is open and obvious to all 'may not be unreasonably dangerous.'" *Smith*, 2021 U.S. Dist. LEXIS 200539, at *10 (citing *Broussard*, 113 So. 3d at 184). "[T]he unreasonable harm determination may be subject to summary judgment 'in cases where the plaintiff is unable to produce factual support for his or her claim that a complained-of condition or thing is unreasonably dangerous.'" *Renwick*, 901 F.3d at 617 (quoting *Allen v. Lockwood*, 2014-1724 (La. 02/13/15), 156 So. 3d 650, 653 (internal quotes omitted)). "Whether a condition is not an unreasonable risk of harm by virtue of being open and obvious is a proper question for summary judgment." *Smith*, 2021 U.S. Dist. LEXIS 200539 at *10 (citing *Bufkin*, 171 So. 3d 851; *Rodriguez v. Dolgencorp, LLC*, 2014-1725 (La. 11/14/14), 152 So. 3d 871; *Allen*, 156 So. 3d 650).

In addition, "this inquiry may not incorporate the plaintiff's subjective knowledge of the defect or 'awareness of the risk' because doing so would undermine Louisiana's comparative fault regime." *Renwick*, 901 F.3d at 617 (quoting *Broussard*, 113 So. 3d at 188).

The first question for the Court, then, is whether there is a legal duty owed. *See Covey v. Phillip*, No. 18-99-JWD-EWD, 2019 U.S. Dist. LEXIS 10467 at *30–31 (M.D. La. Jan. 23, 2019) (deGravelles, J.). Under Article 2317, "[t]he general rule is that the owner or custodian of property has a duty to keep the premises in a reasonably safe condition. The owner or custodian must discover any unreasonably dangerous condition on the premises, and either correct the condition or warn potential victims of its existence." *Farrell v. Circle K Stores, Inc.*, 2022-00849 (La.

03/17/23), 359 So. 3d 467, 473–74. Defendant therefore had a duty to keep the 5950 Plank Road branch in a reasonably safe condition.

With respect to the risk-balancing analysis, Plaintiff raises sufficient questions of material fact that a reasonable jury here could find in her favor. *See Covey v. Phillip*, 2019 U.S. Dist. LEXIS 10467 at *31–32. A reasonable jury could find that a floor mat has social utility. *See Kadlec v. La. Tech. Univ.*, 50,841 (La. App. 2 Cir 11/16/16), 208 So. 3d 992, 997. Plaintiff has presented genuine issues of material fact challenging whether the cost of repair—here, flattening the wrinkles in the rug—was "inordinate or cost-prohibitive," *Broussard*, 113 So. 3d at 192, as demonstrated by the affidavits of Parker and Seymore, both of whom testified that they either flattened the wrinkles themselves or observed others do so when they worked in the bank. (Doc. 35-2 at ¶ 8; Doc. 35-4 at ¶ 11.) Likewise, a reasonable jury could find that Plaintiff's activity—walking out of her local bank after completing a transaction—has the social value of participating in the economy and is not inherently dangerous. The final element of the risk-balancing analysis, whether a reasonable jury could find genuine issues of material fact as to the likelihood and magnitude of harm, is tied to the question of whether the condition was open and obvious. *See Broussard*, 113 So. 3d at 186–87.

The Court's inquiry here, then, focuses on whether the mat presented an open and obvious hazard. Defendant points to *Smith*, a Western District case where the district court considered the location of a mat in a store's entryway; the fact that the plaintiff had traversed the mat multiple times, and the unobstructed view of the mat. 2021 U.S. Dist. LEXIS 200539 at *15. In *Smith*, the defendant presented a surveillance video, which the district court considered at summary judgment. *Id.* at *12–13. The court found that "[a]ny wrinkling or curling of the mat's edges was not so severe as to be clearly visible on the surveillance video[,]" and an assistant manager at the

store testified that "both before and after the incident, she did not observe any hazardous condition." *Id.* at *15–16. Based on these facts, the Western District found that "[w]hatever the condition of the mat, that condition was open and obvious to all[.]" *Id.* at *16.

In the instant case, Plaintiff has similarly alleged that the mat was in the doorway of the bank. (Doc. 35 at 1–2.) However, neither party states how often Plaintiff has visited the bank, nor for how long she had been a customer of the bank; unlike in *Smith*, then, the Court does not find that Plaintiff has traversed the mat many times without incident. Plaintiff has raised the issue of a glare on the floor of the bank in the mornings. (Doc. 35 at 8; Doc. 35-4 at ¶ 6–7.) While Plaintiff does not state the time of her fall, nor that her vision was obstructed, the Court construes all reasonable inferences in favor of the Plaintiff at this stage. As such, Plaintiff has raised a genuine question as to whether a glare made it difficult for anyone to observe the condition of the mat.

Here, furthermore, neither party has submitted video footage of the accident to the Court. The Court relies instead on the testimony before it. Plaintiff alleges that she "stumbled over the wrinkled carpet runner," (Doc. 1-2 at ¶ 3), and that "her foot hit an existing wrinkle causing the mat to wrinkle even more thereby tripping her and sending her to the ground[,]" (Doc. 35 at 7). Jackson's statement that there was "still [] a little wrinkle" in the mat after Plaintiff fell indicates that there was certainly a hazardous condition after the incident, unlike in *Smith*. (Doc. 35-3 at ¶ 8.) *See Smith*, 2021 U.S. Dist. LEXIS 200539 at *15. Jackson's use of the word "still" also leads to the reasonable inference that the wrinkle existed prior to Plaintiff's fall—again, unlike in *Smith*. (Doc. 35-5 at ¶ 8.) *See Smith*, 2021 U.S. Dist. LEXIS 200539 at *15.

Likewise, in a Louisiana state case, *Alexander*, where the plaintiff alleged "that she tripped and fell over a 'wave' or 'lip' in the rubber edge of the floor mat[,]" the Louisiana Fourth Circuit Court of Appeal focused on the following facts: a) that not only had the plaintiff "traversed the

same mat upon entering the bank and neither noticed the wave or lip nor had trouble entering the bank[]"; b) that while the plaintiff was in the bank, no other customers encountered any difficulties with the mat; and c) that there was an "[a]bsence of corroborating evidence" as to the plaintiff's claims. *Alexander*, 212 So. 3d at 718. As in *Alexander*, Plaintiff does not allege that she noticed any issues with the mat or encounter any difficulties with it upon entering the bank. (Doc. 35 at 8.) However, unlike in *Alexander*, Plaintiff states that no other customers entered or exited the bank while she was present. (*See id.*) And crucially, unlike in *Alexander*, Plaintiff here does present corroborating evidence as to her claims—that of Jackson, who states that she saw a wrinkle "still" present in the mat after Plaintiff fell. (Doc. 35-3 at ¶ 8.)

While the presence of the mat itself may have been, as Defendant argues, open and obvious, Plaintiff presents a genuine issue of material fact as to whether the wrinkle that she alleges caused her fall was likewise open and obvious. Plaintiff asserts—and Defendant does not dispute—that the mat was black, which meant that "a wrinkle in the mat would not necessarily be noticeable unless it was quite large." (Doc. 35 at 2.) Plaintiff has therefore raised a genuine issue as to whether the allegedly hazardous condition was open and obvious. As such, the Court finds that the question of whether the alleged defect presented an unreasonable risk of harm remains one of mixed law and fact best left to a jury.

### 3.    *Plaintiff Establishes Questions as to Whether Defects Caused the Damage*

With respect to the third factor, Defendant argues that "Plaintiff does not know if she tripped over her own feet, the floor, the mat itself, or a wrinkle or buckle in the mat." (Doc. 32-1 at ¶ 7.) Plaintiff, however, alleges that she "stumbled over the wrinkled carpet runner[.]" (Doc. 1-2 at ¶ 3.) She further testified in her deposition that she "tripped over the rug, and [she] fell." (Doc. 35-6 at 4:2.) In addition, she states that Jackson told Plaintiff after her fall that there were "still []

buckles in the rug," implying that the wrinkles could have predated Plaintiff's fall. (*Id.*) In her affidavit, Jackson does not explicitly state that the wrinkles were there before Plaintiff's fall, but she does say that after Plaintiff fell, the mat "still had a little wrinkle in it." (Doc. 35-3 at ¶ 8.) The Court "view[s] the evidence in the light most favorable to the non-moving party, drawing 'all justifiable inferences . . . in the non-movant's favor.'" *Renwick*, 901 F.3d at 611 (quoting *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008)). Plaintiff has therefore presented a genuine issue of material fact as to whether the wrinkles in the rug predated her fall.

### 4.    *Plaintiff Shows Knowledge or Constructive Knowledge*

Defendant argues that Plaintiff has presented no facts that Defendant knew of the alleged defect. (Doc. 32-2 at 10–11; Doc. 37 at 7–9.) At most, they assert, she argues that "security guards and bank employees were well aware for a long time, years even, that the mat caused customers and employees to stumble upon it." (Doc. 35 at 7.) The security guards, Parker and Seymore, were not employed by Defendant Regions Bank. (Doc. 35-2 at ¶ 2; Doc. 35-4 at ¶ 1.) Parker was assigned to the Regions Bank branch in question for six months, dates unspecified. (Doc. 35-2 at ¶ 2.) Seymore was assigned to the branch for approximately five years, but he stopped working as a security guard in 2019. (Doc. 35-4 at ¶ 1.) Neither one of them is able to speak to the conditions at Defendant Regions Bank at the time of Plaintiff's fall in July of 2021.

Neither Parker nor Seymore alleges that they ever reported the alleged wrinkles to an employee of Defendant Regions Bank. (*See* Doc. 35-2; Doc. 35-4.) Parker states that he has "no knowledge that there was any procedure or instruction for any bank employees to inspect the carpet/mat" and if there was, he "never witnessed it being performed." (Doc. 35-2 at ¶ 7.) He states that "[i]t was not [his] job, but when [he] saw that the mat/carpet was wrinkled, [he] would flatten it out." (*Id.* at ¶ 8.) Likewise, Seymore does not state that he knew of any bank policies or

procedures with respect to the mat. (*See* Doc. 35-4 at ¶ 3.) However, Seymore states that he "witnessed bank employees flatten the mat/carpet many times." (*Id*. at ¶ 11.) In his opinion, there was "no doubt that the bank employees knew that the mat/carpet caused customers and employees alike to stumble[.]" (*Id.* at ¶ 12.)

In addition to the security guards, Plaintiff presents affidavits from two former employees of Defendant Regions Bank. Trim was employed by Defendant from 2010 through 2017, ending his employment there roughly four years prior to Plaintiff's fall in July of 2021. (Doc. 35-5 at ¶ 1.) He states that at no point during his employment was there "a safety meeting or any discussion about checking the mats to ensure it was not wrinkled or bunched up." (*Id.* at ¶ 6.) He claims that it was "well known by [] the bank employees, that occasionally customers stumbled/tripped over the carpets." (*Id.* at ¶ 8.)

Plaintiff also includes an affidavit from Jackson, who was currently employed by Defendant Regions Bank at the time of Plaintiff's fall. (Doc. 35-3 at ¶ 1.) Jackson states that although all of the bank employees "have had occasion to see or know someone that had stumbled over the mat as it would bunch up, wrinkle or fold from being walked upon[,]" during her time employed by Defendant, "we never had a safety meeting or any discussion about checking the mats to ensure they were not wrinkled or bunched up." (*Id.* at ¶¶ 6–7.)

Defendant argues that Plaintiff has not presented any information to show that the mats discussed in these affidavits are the same mat or even type of mat over which Plaintiff allegedly tripped. (Doc. 37 at 6, 8.) Defendant also argues that it has no records of any reports made to it about the mats, and that Plaintiff has not alleged that any employees did report any incidents to Defendant. (*Id.* at 8.)

The affidavits from the former security guards and employees are sufficient, at the summary judgment stage, to allow for a reasonable inference that the mat over which past customers and employees stumbled is the same mat on which Plaintiff fell. (*See* Docs. 35-1, 35-2, 35-3, 35-4.) Likewise, Plaintiff has alleged that bank employees knew about the wrinkles in the mat, and she has presented affidavits asserting the same. (Doc. 35 at 2, 7; Doc. 35-1 at ¶ 6; Doc. 35-2 at ¶ 9; Doc. 35-3 at ¶ 6; Doc. 35-4 at ¶¶ 10–12; Doc. 35-5 at ¶ 8.) If this were not enough to confer knowledge upon Defendant, "[t]he concept of constructive knowledge imposes a reasonable duty to discover apparent defects in things under the defendant's garde." *Boutin*, 164 So. 3d at 246 (citing *Dufrene v. Gautreau Family, LLC*, 07-467 (La. App. 5 Cir. 02/22/08), 980 So. 2d 68, 80, *writs denied*, 08-629 (La. 05/09/08), 980 So. 2d 694 and 08-628 (La. 05/09/08), 980 So. 2d 698). "Constructive knowledge can be found if the conditions that caused the injury existed for such a period of time that those responsible, by the exercise of ordinary care and diligence, must have known of their existence in general and could have guarded the public from injury." *Id.* at 246–47 (citing *Casborn v. Jefferson Hosp. Dist. No. 1*, 11-1020 (La. App. 5 Cir. 05/22/12), 96 So. 3d 540, 543).

Plaintiff argues that the alleged defect—the tendency of the mat to wrinkle, bunch, or slide—existed for years prior to her fall. (Doc. 35 at 5–7.) She argues that it was "common knowledge among [Defendant's] employees and security guards that the mat caused people to stumble over it and it was only a matter of time until someone was seriously injured." (*Id.* at 7.) She relies on the affidavits of the former security guards and employees, all of whom state that they had at some point seen customers or employees stumble due to the mat's tendency to wrinkle, bunch, or slide. (Docs. 35-2 at ¶ 9; Doc. 35-3 at ¶ 6; Doc. 35-4 at ¶¶ 10, 12; Doc. 35-5 at ¶¶ 7–8.)

These statements are therefore sufficient to allow a reasonable inference that Defendant was or should have been aware of the alleged defect in the mat prior to Plaintiff's fall.

Plaintiff has therefore raised genuine questions of material fact as to the four elements of her claim under Article 2317. As such, Plaintiff has carried her summary judgment burden.

### C.    Res Ipsa Loquitur

Defendant also challenges Plaintiff's argument that *res ipsa loquitur* should apply. In order for *res ipsa loquitur* to apply, three elements must be met: "(1) the injury is of the kind which does not ordinarily occur in the absence of negligence on someone's part; (2) the evidence sufficiently eliminates other more probable causes of the injury, such as the conduct of the plaintiff or of a third person; and (3) the alleged negligence of the defendant must be within the scope of the defendant's duty to the plaintiff." *Dawson*, 674 F. App'x at 343 (quoting *Linnear*, 966 So. 2d at 44; *see also* Restatement (Second) of Torts § 328D.

Plaintiff here alleges that she tripped over the mat and fell. (Doc. 1-2 at ¶ 3.) She has not shown that her injury, a fall, is of the kind that does not ordinarily occur in the absence of negligence. In addition, she has not sufficiently eliminated other causes of the injury, such as her conduct or that of a third person. As Defendant points out, there is the possibility that Plaintiff tripped over her own feet or over the floor. (Doc. 32-1 at ¶ 7.) While Plaintiff has established a genuine question of material fact as to whether her fall was caused by a defect in the mat, she has not shown that "the instrumentality that caused the plaintiff's injury, or all reasonably probable causes of the plaintiff's injury, were under the exclusive control of the defendant." *Dawson*, 674 F. App'x at 343 (citing *Cangelosi v. Our Lady of the Lake Regional Med. Ctr.*, 564 So. 2d 654, 666 (La. 1989); Restatement (Second) of Torts § 328D cmt. g). Plaintiff has not established that all

reasonably probable causes of her injury were under the exclusive control of Defendant. The Court

therefore declines to apply the doctrine of *res ipsa loquitur.*

## V.     CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion for Summary Judgment* (Doc. 32) filed by Defendant

Regions Financial Corp., d/b/a Regions Bank, is **DENIED**.

Signed in Baton Rouge, Louisiana, on February 26, 2025.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**